632 P.2d 1170

In re Petition of LOWER VALLEY
WATER AND SANITATION
DISTRICT:

LOWER VALLEY WATER AND SANI-
TATION DISTRICT, Petitioner-Appel-
lant and Cross-Appellee,

v.

PUBLIC SERVICE COMPANY OF NEW
MEXICO, Western Coal Company, Utah
International and Tuscon Electric Pow-
er Company, Respondents-Appellees and
Cross-Appellants.

and

Paragon Resources, Inc., Valencia Energy
Company and San Juan Coal
Company, Intervenors.

No. 13316.

Supreme Court of New Mexico.

Aug. 24, 1981.

Tansey, Rosebrough, Roberts & Gerding, Byron Caton, Farmington, for petitioner-appellant and cross-appellee.

Briones & Pittard, Felix Briones, Farmington, Keleher & McLeod, Robert H. Clark, Albuquerque, Steven Banzhaf, Tucson, Ariz., for respondents-appellees and cross-appellants and intervenors.

## OPINION

PAYNE, Justice.

This appeal presents important questions regarding the statutory scheme for creation of water and sanitation districts.

Citizens in the Lower Valley of the San Juan River in San Juan County petitioned the district court for the creation of the Lower Valley Water and Sanitation District (Lower Valley) pursuant to the Water and Sanitation District Act, Sections 73–21–1 through 73–21–54, N.M.S.A.1978 (Orig. Pamp. and Cum.Supp.1980). The water and sewage situation there has deteriorated with the rapid population increase caused by development related to the energy industry. The situation is dangerous and unhealthy; in some areas, effluent material from septic tanks is surfacing.

As described in the petition, the proposed district would include a substantial area owned by the protestors, Public Service Company of New Mexico, Western Coal Company, Utah International and Tucson

Electric Power Company. The trial court found that the protestors had no "actual and impending" need for the proposed sewer improvements. It modified the petition to exclude their land for purposes of the sewer improvements. This land was retained for water district purposes, however. Under the petition as filed, the protestors would bear 98% of the construction and purchasing costs associated with the formation of the district. The estimated costs total $7.4 million, with $6.4 million for sewage facilities and $1.0 million for water. Under the petition as modified, the protestors would bear a similar percentage of only the $1.0 million for water improvements.

Lower Valley appeals the modification order excluding the protestors' land from the sewage district, asserting that it was based on improper criteria. The protestors cross-appeal on grounds that the trial court erred in not granting their motion to dismiss. This motion was based on allegations that the original petition did not meet the statutory requirements. The protestors also appeal the modification order on grounds that the protestors' land should not be included in the water district. There are five basic issues presented: 1) whether the order appealed from is a final order; 2) whether the trial court applied the proper criteria for determining the boundaries of the sewage district; 3) whether the statutory requirements for a valid petition are constitutional; 4) the extent of the trial court's statutory duty to consult with related state agencies; and 5) whether the trial court abused its discretion by including the protestors' lands within the water district.

I.

The protestors argue that the order appealed from is not a final judgment and is not therefore appealable. There is no statutory language determinative of this question. The protestors base their view on the fact that the court must enter additional orders before the district is actually created.

The procedure for creating water and sanitation districts includes three distinct steps requiring action by the district court. First, the court conducts a hearing to determine the validity and merits of the petition to establish the district. §§ 73–21–8 and 73–21–9, N.M.S.A.1978. At the conclusion of the hearing, the court may grant, modify, or deny the petition. Second, if the court grants or modifies the petition, it must submit the question of organization of the district to the voters. § 73–21–9(F). Third, if approved by the electors, the court must declare the district organized, give it a corporate name, and designate the first board of directors. § 73–21–9(I). The statute specifies that no appeal shall lie from the entry of an order establishing the district, Section 73–21–9(J), N.M.S.A.1978, but is silent as to the appealability of prior court actions in this process.

The only step in the process which requires full exercise of the court's discretion is the first one. After the court's disposition of the petition, all its subsequent actions are ministerial.

The Court of Appeals considered the factors relevant to a determination of finality in *Johnson v. C & H Construction Company*, 78 N.M. 423, 432 P.2d 267 (Ct.App.1967).

> A judgment or order is not final unless all the issues of law and of fact necessary to be determined, were determined, and the case completely disposed of so far as the court has power to dispose of it. In determining whether there is a final judgment or order, we look to the substance and not the form of the judgment or order.
> * * * The current proceeding must have been completely disposed of so far as the court has power to dispose of it. (Citations omitted.)

*Id.* at 425, 432 P.2d at 269.

■ Applying these factors to the instant case, we hold that the modification order was final and therefore appealable. The court had determined all issues of law and fact regarding the petition and had completely disposed of the matter. The remaining steps would constitute further ac-

tion on the proposed district, but could in no way alter the court's modification order. There was no further action contemplated with respect to determining the boundaries of the district.

## II.

■ Lower Valley claims that since the statute is intended to promote the health, safety, prosperity, security and general welfare of the inhabitants of the districts, Section 73–21–1, N.M.S.A.1978, it differs from those statutes which assess taxes for a specific purpose based on an assessment of the "benefit" to the land in question. Instead, the statute provides for ad valorem taxes against all the taxable property within the district. § 73–21–17, N.M.S.A.1978. Therefore, Lower Valley contends that the proper criteria for determination of water and sewage districts is the area which must be included to assure community health and welfare and not whether each specific area will receive a special benefit. We recognize that the districts formed under the Act are intended to promote the general health and welfare of the inhabitants of the districts. However, we cannot ignore the statutory procedure for creation of the district. Section 73–21–9(E) specifies conditions which, if existent, permit the district court to deny or modify the petition. Adoption of Lower Valley's proposition would render this section of the statute ineffective. Broad considerations of community health and welfare cannot be invoked to override the specific considerations set out by the Legislature. In the present case, the court found that the protestors' lands had no need for the proposed sewage improvements and accordingly modified the petition to exclude these lands. We find substantial evidence to support this determination and hold that the court followed the statutory procedure.

Lower Valley argues that the same considerations applicable to exclusion of land from an organized district should apply to exclusion of land from a proposed district. In order to exclude land from an organized district, the owner must persuade the board of directors that it is in the best interests of the district to have the land excluded. § 73–21–24, N.M.S.A.1978. This statutory scheme sets forth different considerations from those specified for creation of a district. We cannot say that the Legislature acted improperly by specifying that the court should have relatively free discretion to consider all relevant factors when considering a proposed district, but that in changing a district once it has been voted on and organized, the best interests of the district should be paramount.

Accordingly, we affirm the trial court on this issue.

## III.

The protestors asserted by way of a motion to dismiss that there was no showing that the signers of the petition were tax-paying electors of the area included in the proposed district and that therefore the required twenty-five percent of such persons' signatures were not accumulated. § 73–21–6(A), N.M.S.A.1978. The court took this motion under advisement and requested that the matter be briefed. This motion was never formally ruled on or addressed in the court's Findings and Conclusions, and was therefore denied by implication. We are unable to conclude on this record whether the trial court denied the motion because he considered the requirements unconstitutional, or for some other reason. We will discuss this issue and remand for appropriate proceedings so that the district court may consider evidence and make the appropriate finding or dismiss the petition.

Lower Valley cites numerous cases for the proposition that the procedure and requirements for obtaining signatures on the petition are unconstitutional. *Hill v. Stone,* 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975); *Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); *Kramer v. Union School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Prince v. Board of Ed. of Cent. Con. Ind. Sch. D. No. 22,* 88 N.M. 548, 543 P.2d 1176 (1975); *Board of Education of Vil. of Cimarron v. Maloney,* 82 N.M. 167, 477 P.2d 605 (1970). These cases hold that direct

restrictions on the right to vote, such as limiting of the franchise to property owners, are unconstitutional even where the election relates to specialized governmental entities such as school boards. Since numerous New Mexico statutes, (e. g., § 73–1–3 (artesian conservancy districts), § 73–6–1 (drainage districts), and § 73–9–3 (irrigation districts)), in addition to Section 73–21–6(A), limit the category of persons who may sign petitions for the creation of special districts, we find it necessary to address the issue.

In *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the United States Supreme Court held that the equal protection clause requires adherence to the principle of one-person-one-vote in elections of state legislators. The *Reynolds* rule was later extended to the election of county government officials in *Avery v. Midland County*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). In *Hadley v. Junior College District*, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), the Court applied *Reynolds* to the election of trustees of a community college district because those trustees "exercised general governmental powers" and "performed important governmental functions" that had significant effect on all citizens residing within the district. *Id.* at 53–54, 90 S.Ct. at 793–94. However, the Court has found that certain types of entities are so specialized and so disproportionately affect certain portions of the public that the franchise may be limited to those members of the public peculiarly affected. *Ball v. James*, —— U.S. ——, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981). *Salyer Land Co. v. Tulare Water District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973).

The United States Supreme Court has held state laws tying voting eligibility to property ownership for certain types of elections to be invalid. *Hill v. Stone, supra* (election to approve issuance of bonds to finance a city library); *Phoenix v. Kolodziejski, supra,* (issuance of general obligation bonds secured by a lien on real property); *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (bonds to finance a municipal utility).

Those cases, however, involved elections relating to the operations of traditional municipalities exercising the full range of normal governmental powers. They are controlling only where it is first determined that the governmental entity is not a special-purpose entity under *Salyer* and *Ball*. In *Kramer v. Union School District, supra*, the Court held unconstitutional a scheme limiting the right to vote in school district elections to owners or lessees of real property and parents of enrolled children. The limitation denied equal protection because it did "not meet the exacting standard of precision" since it was both under- and over-inclusive. *Id.* 395 U.S. at 632, 89 S.Ct. at 1892.

In *Maloney, supra*, this Court held that a state constitutional clause restricting to land owners the right to vote on creation of school district debt violated the equal protection clause of the United States Constitution. Later, in *Prince v. Board of Ed. of Cent. Cont. Ind. Sch. D. No. 22, supra*, this Court adopted a rule from *Hill v. Stone, supra*, that "as long as the election in question is not one of special interest, any classification restricting the franchise on grounds other than residence, age, and citizenship cannot stand unless the district or State can demonstrate that the classification serves a compelling state interest." *Id.* 88 N.M. at 552, 543 P.2d 1176. The Court concluded that the election in *Prince*, a school board election and bond issue, was one of general rather than special interest. Accordingly, the Court considered whether the State's interest in excluding non-taxpaying Indian reservation residents was sufficient under this test. It held that there was no compelling state interest, and upheld the election in which reservation residents participated.

Pursuant to the principles outlined above, we must first determine whether the proposed district is of general or special interest. If it is of general interest, we must decide whether the *Reynolds* rule extends beyond actual voting to the preliminary step of petition qualification.

A governmental entity may be considered of general interest where it performs functions traditionally at the core of government service or where it performs a variety of functions normally performed by the government. For example, "the provision of electricity is not a traditional element of governmental sovereignty, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 455, 42 L.Ed.2d 477 (1974), ... and so is not in itself the sort of general or important governmental function that would make the government provider subject to the doctrine of the *Reynolds* case." (Footnote omitted.) *Ball v. James, supra* 101 S.Ct. at 1819. Other types of powers and services, however, do invoke the strict demands of *Reynolds*. For example, authority to impose ad valorem property taxes or sales taxes, or to enact laws governing the conduct of citizens, are at the core of governmental sovereignty. Administration of normal governmental functions such as operation of schools, street maintenance, or sanitation, health, or welfare services may bring an entity within the *Reynolds* requirements. On the other hand, storage and delivery of water, without a concurrent power to control the use of such water, is not such a central governmental function, even where the entity possesses a nominal public character. *Ball, supra*, and *Sayler, supra*.

■ Applying these considerations to Lower Valley, we note that Section 73–21–17 gives the district authority to impose ad valorem taxes. The proposed district is essentially an expansion of a private water users cooperative association organized in 1966. This expansion is considered essential primarily because of significant health risks present in the area. Thus it involves administration of sanitation and health services. Accordingly, we hold that the district is of general, not special, interest.

■■ Having determined that the *Reynolds* rule must apply to the creation of a water and sanitation district, we now must decide whether *Reynolds* attaches at the petition stage. A district cannot be formed until a petition which conforms to statutory requirements is filed in a district court. The question we address is whether the statutory requirement that twenty-five percent of the taxpaying electors of the district sign the petition denies equal protection. We conclude it does not.

■ We note that this precise question has not been addressed by the United States Supreme Court. The cases discussed *supra* deal with direct limitations on the right to vote, whereas the restriction here involves not the right to vote but rather the right, created by the Legislature, to propose a district to the voters. Being a step removed from the actual voting process, we conclude that the State need not show a compelling interest but that a rational basis justification will suffice.

■ While the public generally will benefit upon creation of a water and sewage district, it is the taxpayers who bear the substantial financial burden. The Legislature may properly determine that in order to protect these taxpayers, any petition for the creation of a district must be approved by at least twenty-five percent of this class. The United States Supreme Court noted that "most States find it possible to protect property owners from excessive property tax burdens by means other than restricting the franchise to property owners." *Phoenix, supra* 399 U.S. at 213, 90 S.Ct. at 1996. The petitioning procedure adopted by the Legislature exemplifies this notion of protecting property owners.

■ We do not decide whether the voting procedure set out in Section 73–21–9(C) is constitutional since it is not at issue here.

We remand on this issue for further consideration consistent with this opinion.

## IV.

Section 73–21–9(D) specifies that in addition to the findings relating to petition validation, Section 73–21–9(A), the trial court must consult and request an opinion from:

(1) the state engineer, to determine whether the proposed district has adequate water rights ...; and

**538**

(2) the environmental improvement agency as to the technological feasibility of the proposed improvements....

■ The protestors contend that there was not sufficient evidence presented to the trial court to enable it to fulfill these statutory requirements. We also remand on this point for further consideration consistent with the following guidelines. The statute requires that the district court "consult and request an opinion from" the state agencies indicated. The Legislature intended that these specific agencies have an opportunity to present their views to the district court. Failure to afford this opportunity is reversible error. We cannot determine on this record whether an opportunity was adequately provided to the State Engineer and the Environmental Improvement Agency for presentation of their views in this case. We remand to the trial court for a determination as to whether these requirements were met.

### V.

■ The protestors seek reversal of that portion of the modification under which retains their land within the water district. However, the district court's decision is supported by substantial evidence and we affirm.

Affirmed in part and remanded for the limited purposes specified.

IT IS SO ORDERED.

EASLEY, C. J., and SOSA, Senior Justice, concur.