1999-NMCA-136

991 P.2d 16

**Roy A. HUGHES, Barbara Hughes, Charles Newman, Howard Cottrell, Paula Cottrell, William Overmier, Anna Overmier, Thomas Lakeman, Karen Lakeman, James Moore, Sandra Moore, Robert Tinley, Virgil Beagles, John McKenzie, and Bella McKenzie, Plaintiffs–Appellants,**

v.

**TIMBERON WATER AND SANITATION DISTRICT, Lester Johnson, Jack Deaton, Ray Wilson, Jean Campbell, and Marilyn Ellison, Defendants–Appellees.**

No. 19,922.

Court of Appeals of New Mexico.

Aug. 23, 1999.

Certiorari Denied, No. 25,956, Oct. 12, 1999.

Ray Twohig, Ray Twohig, P.C., Albuquerque, for Appellants.

Thomas A. Sandenaw, Jr., Leonard J. Piazza, Sandenaw, Carrillo & Piazza, P.C., Las Cruces, for Appellees.

## OPINION

HARTZ, Judge.

{1} Appellants own real property within the Timberon Water and Sanitation District

in Otero County (the District) but do not reside within the boundaries of the District. Appellees are the District and its directors, all of whom are residents of the District. The directors have limited the right to vote in District elections to residents of the District. Appellants brought this action in district court to enforce their alleged statutory right to vote in District elections. Both Appellants and Appellees moved for summary judgment. The district court granted Appellees' motion. We affirm.

{2} This case arises out of the Water and Sanitation District Act, NMSA 1978. §§ 73–21–1 to –54 (1943, as amended through 1993) (the Act). The Act provides for the creation of water and sanitation districts to purchase, acquire, establish or construct (a) waterworks: (b) sanitary sewers or other systems for disposal of sewage, garbage, or refuse, (c) streets and street improvements; and (d) park and recreational improvements. *See* § 73–21–3. The board of directors of a district has a number of powers, *see, e.g.*, § 73–21–16, including the powers to issue bonds, *see* § 73–21–26, and to levy and collect ad valorem taxes on taxable property within the district, *see* § 73–21–17.

{3} The first step toward organizing a water and sanitation district is the filing of a petition with the district court for a county containing at least part of the proposed district. *See* § 73–21–6(A). The petition may be a voter petition, which must be signed by at least "twenty-five percent of the taxpaying electors of the district." *Id.* Or it may be a commission petition, which is signed by the chairman of the board of county commissioners after being authorized by a resolution of the board. *See id.* The Act sets forth what the petition must contain, *see* § 73–21–6(B), requires approval of the petition by the county special district commission, *see* § 73–21–8, and prescribes the procedures for court approval of the petition, *see* § 73–21–9(A) to (F).

{4} If the district court approves the petition, it must order an election at which the voters will vote for or against the organization of the district. *See* § 73–21–9(F), (H). If the petition was a voter petition, the voters at the election also choose an initial three-member board of directors of the district. *See* § 73–21–9(H). The board may later be expanded to five members. *See* § 73–21–15. If the petition was a commission petition, the board of county commissioners appoints the first five-member board of directors for the district once the voters approve the district. *See* § 73–21–15.1. In either case, as the terms of the members of the district board expire, elections are conducted for their successors. *See* §§ 73–21–14, 73–21–15.1.

{5} The issue on this appeal is whether nonresidents of a district who own property within the district are entitled to vote in district elections. Different sections of the Act use different terms to describe who is entitled to vote in particular types of district elections. Section 73–21–14 states that board members should be elected by "the taxpaying electors of the district." Section 73–21–15(B) states that "a majority of the qualified electors" determine whether the board should be expanded from three to five members. The creation of district indebtedness of $5000 or more must be submitted to a vote of the "qualified taxpaying electors of the district." *See* §§ 73–21–28, 73–21–31.

{6} The term defined by the statute is "taxpaying elector of a district." Section 73–21–4(D) states that the term

means a person, qualified to vote at general elections in the state, who either has paid or incurred a general tax liability on real property within the district in the twelve months immediately preceding a designated time or event or who is purchasing real property within the district under a real estate contract where a property tax has been paid or incurred on the real property in the twelve months immediately preceding a designated time or event.

The portion of the definition in question here is the language "a person, qualified to vote at general elections in the state." There is no dispute that Appellants satisfy the remaining requirements of the definition. Appellants contend that anyone properly registered to vote anywhere in New Mexico is "a person, qualified to vote at general elections in the state," and that therefore they are entitled to vote in District elections.

{7} Before beginning our analysis of the statutory language, we note the potential impact of provisions of the New Mexico and United States Constitutions. First, the New Mexico Constitution. Appellees contend that Appellants are foreclosed from voting in District elections by Article VII, Section 1, of the New Mexico Constitution. The first sentence of the Section sets forth the qualifications for those voting for public officers. It states:

Every citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election, except idiots, insane persons and persons convicted of a felonious or infamous crime unless restored to political rights, shall be qualified to vote at all elections for public officers.

Although the age and residency requirements violate the United States Constitution in some respects, see U.S. Const. amend. XXVI (setting voting age at 18); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (invalidating requirements that would-be voter reside for one year in state and three months in county), there remains a requirement of thirty-day residency in the precinct in which one is voting for a public officer. Appellees assert that members of the board of directors of a water and sanitation district are public officers because the district is one of general interest. As a result, they argue, only those residing within the District, which encompasses Precinct 5 in Otero County, should be permitted to vote for members of the board. Appellants disagree. They rely on Davy v. McNeill, 31 N.M. 7, 240 P. 482 (1925), which held that members of the board of an irrigation district are not "public officers" within the meaning of Article VII, Section 1. See id. at 21–26, 240 P. at 488–90. Davy expressed approval of decisions in other states holding that school board members are not public officers, see id. at 24–25, 240 P. at 490, and then concluded: "If such constitutional provisions do not relate to school districts unless specifically mentioned, or unless made definite by some expression in the Constitution, it certainly should not apply to quasi munici-

pal corporations in which the general public are not primarily interested." Id. at 25–26, 240 P. at 490. Thus, we question whether the members of the District board are "public officers" within the meaning of Article VII, Section 1. In any event, we need not decide the issue because we rest our decision on construction of the statute.

{8} Next, we consider the federal constitutional issue. The United States Supreme Court has held that the equal protection clause of the Fourteenth Amendment to the United States Constitution forbids taxpayer or property-ownership requirements for certain elections. See, e.g., Kramer v. Union Free Sch. Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (school district elections). On that ground the New Mexico Supreme Court has invalidated a clause of the state constitution that permitted only land owners to vote on creation of .school district debt. See Board of Educ. v. Maloney, 82 N.M. 167, 477 P.2d 605 (1970). As a general matter, the New Mexico Supreme Court has ruled that such property-ownership restrictions are unconstitutional in elections of "general interest." See Lower Valley Water & Sanitation Dist. v. Public Serv. Co., 96 N.M. 532, 535–37, 632 P.2d 1170, 1173–75 (1981). The issue before the court in Lower Valley was the constitutionality of the property-ownership requirement for those signing a voter petition to create a water and sanitation district. The Court upheld the requirement, but it stated that a water-and-sanitation-district election is of general interest. See id.

{9} Were we to adopt the view in this case that a district election is one of general interest, then the property-ownership requirement contained in the statutory definition of "taxpaying elector of a district" would be unconstitutional if enforced in district elections. Consequently, if Appellants are correct that the language "qualified to vote at general elections in the state" contains no district-residency requirement, the resulting voting list would be remarkable, to say the least. In the absence of a property-ownership or district-residency requirement, everyone permitted to vote in New Mexico would

be permitted to vote in *every* election in *every* water and sanitation district.

{10} To avoid this result, Appellants contended at oral argument that District elections are not of general interest. They claimed that the relevant discussion in the *Lower Valley* opinion was mere dictum. They further contend that *Lower Valley* misconstrued precedents of the United States Supreme Court regarding special-district elections. Nevertheless, the discussion of our Supreme Court in *Lower Valley*, even if dictum, is extensive and thorough. We are not tempted to challenge or distinguish our Supreme Court's conclusion. At the least, the dictum of the Supreme Court suggests that the statutory property-ownership requirement for voters in district elections is of questionable constitutionality. Although we rest our decision in this case on our interpretation of the statutory language, not constitutional doctrine, it is appropriate for a court interpreting a statute to consider whether a particular interpretation is likely to create problems arising from constitutional doctrine. *Cf. Lovelace Med. Ctr. v. Mendez,* 111 N.M. 336, 340, 805 P.2d 603, 607 (1991) ("It is, of course, a well-established principle of statutory construction that statutes should be construed, if possible, to avoid constitutional questions.").

{11} We now turn to statutory interpretation. As previously stated, Section 73–21–4(D) defines "taxpaying elector of a district" as "a person, qualified to vote at general elections in the state" who, roughly speaking, owns or is purchasing real estate in the district. Appellants construe "a person, qualified to vote at general elections in the state," as referring to anyone qualified to vote somewhere within New Mexico. A person registered to vote in Precinct 5 of Otero County, which the district encompasses, would be such a person, but so would someone registered to vote in Bernalillo County. We have already noted that this interpretation would lead to an absurd result if we also followed the *Lower Valley* dictum that district elections are "general interest" elections for which property-ownership qualifications are prohibited. But even aside from that consideration, a careful examination of the election laws and the Act leads to a different interpretation.

{12} In our view, a "taxpaying elector of a district" must be a resident of the district. In arriving at this view, we look first at the election laws. Voting in New Mexico general elections is by precinct. *See* NMSA 1978, § 1–11–2 (1991); NMSA 1978, §§ 1–12–1 to –69 (1969, as amended through 1995) (conduct of elections); NMSA 1978, §§ 1–3–1 to –18 (1969, as amended through 1997) (precincts and polling places). That is, to vote in a general election, one must vote in a precinct. And only a resident of the precinct is eligible to vote in the precinct. *See* § 1–12–7(A) ("No person shall vote in any ... general ... election unless he is a voter of the precinct in which he offers to vote."); NMSA 1978, § 1–5–5 (1993) (county clerk required to enter precinct of the voter on certificate of registration). In other words, to be qualified to vote in a general election in New Mexico, one must reside in the precinct where one intends to vote. Accordingly, the phrase "qualified to vote at general elections in the state" was likely understood by the Legislature enacting the statute as encompassing a local-residence requirement.

{13} This conclusion is reinforced by an examination of the election laws in effect when the Act was adopted. At that time the Election Code defined "qualified elector," "elector," and "voter" as

> any citizen of the United States who at the date of the election will be over the age of twenty-one [21] years and will have resided in the state twelve [12] months, in the county ninety [90] days and in the precinct in which he offers to vote thirty [30] days, next preceding the election, except idiots, insane persons, persons convicted of a felonious or infamous crime unless restored to political rights, and Indians not taxed.

NMSA 1941, § 56–101 (1939) (alterations in original). The language of the Election Code suggests that the Legislature understood that a voter was qualified to vote in an election only if residing in the precinct where the vote was to be cast. Although the Election Code could not override contrary provisions of the Act, the Act itself incorporated the Election Code. It provided that the initial

election to approve the district and select the first board "shall be held and conducted as nearly as may be in the same manner as general elections in this state." 1943 N.M. Laws, ch. 80, § 8; *see* § 73–21–9(G). Likewise, bond elections for the district were to be conducted "in the manner prescribed by law for the holding of general elections." *Id.* § 27; *see* § 73–21–30.

{14} More importantly, the Act itself suggests that only residents can vote in district elections. The Act appears to use interchangeably the phrases "taxpaying elector of a district," "taxpaying elector residing within the district," and like terms. For example, Section 73–21–6(A) requires that a petition for creation of the district "be signed by not less than twenty-five percent of the taxpaying electors of the district." But at the district court hearing to determine the sufficiency of the petition, the court is required to "ascertain . . . the total number of taxpaying electors residing within the proposed district." Section 73–21–9(A). If Appellants' interpretation of the term "taxpaying elector of the district" is correct, one is faced with a puzzle. Why would the district court need to determine the number of taxpaying electors residing within the proposed district, if the test for sufficiency of the petition is whether it was signed by twenty-five percent of the taxpaying electors, both resident and nonresident?

{15} The question is posed even more starkly later in Section 73–21–9. If the district court determines that the petition is proper, "the court shall order that the question of the organization of the district be submitted to the *taxpaying electors residing within the boundaries of the district* . . . ." Section 73–21–9(F) (emphasis added). Thus, the election ordered by the court is only for residents. Yet "[a]t the election, *the taxpaying electors* shall vote for or against the organization of the district . . . ." Section 73–21–9(H) (emphasis added). If those who vote—"the taxpaying electors"—need not be residents, why should the court order an election at which only residents can vote?

{16} Adopting Appellants' interpretation of the term "taxpaying elector of a district" would also create a puzzle regarding the qualifications for members of the district board of directors. If the district is created by voter approval of a voter petition, the original board is selected at the election approving the district. In that event, the voters "vote for three taxpaying electors of the district who shall constitute the board of directors of the district." Section 73–21–9(H). Under Appellants' interpretation of "taxpaying electors of the district," the original board members need not be residents of the district. On the other hand, if the district is created by voter approval of a commission petition. "[t]he board shall consist of five directors *who are residents of the district.*" Section 73–21–15.1 (emphasis added). What reason would the Legislature have for imposing a residency requirement on appointed directors but not elected ones? Moreover, the distinction would continue even after the appointed board is succeeded by elected members. Section 73–21–14 provides for elections of board members after the initial creation of the board. Subsection A concerns boards created after a voter petition. Subsection B concerns boards created after a commission petition. Subsection C relates to all elections to boards. The final sentence of Subsection C states: "Any new member of the board shall qualify in the same manner as members of the first board qualify." Therefore, if "taxpaying electors of the district" need not be residents of the district, then newly elected board members must be residents only if the initial board was created after a commission petition. Why?

{17} To be sure, the interpretation we adopt also raises questions. If we are correct that "taxpaying electors of the district" must be residents of the district, then in Section 73–21–9(F) the Legislature could have referred to simply "taxpaying electors of the district." rather than "taxpaying electors residing within the boundaries of the district." Ordinarily, we assume that the Legislature did not include unnecessary language in a statute. On that assumption, we would infer that the words "residing within the boundaries of the district" must add some additional restriction and that the term "taxpaying electors of the district" could or-

dinarily include nonresidents. In our experience, however, the Legislature has not drafted statutes with the precision that judges might prefer. We have never blindly assumed that the Legislature writes statutes with exquisite attention to detail. We will not make that assumption in this case. *See Jeffrey v. Hays Plumbing & Heating*, 118 N.M. 60, 63, 878 P.2d 1009, 1012 (Ct.App. 1994) ("We should not attribute to the legislature an undue precision in drafting and thereby frustrate legislative intent when we construe a statute."). We note that the Act refers in various places to "taxpaying electors of the district," § 73–21–9(H), "taxpaying electors residing within the boundaries of the district," § 73–21–9(F), "qualified electors," § 73–21–15(B) (those who vote on whether to expand board to five members); and "qualified taxpaying electors of the district," §§ 73–21–28 and –31 (those who vote on bonded indebtedness). Such variation does not bespeak great care in drafting. In our view, the most reasonable construction of the statutory language is that only residents of the district are permitted to vote in district elections. We also note, although this consideration is not determinative, that our interpretation enables us to avoid potentially troublesome constitutional issues.

## CONCLUSION

{18} For the above reasons, we hold that the district court correctly ruled that Appellants are not entitled to vote in District elections. We affirm the summary judgment entered by the district court.

{19} **IT IS SO ORDERED.**

BUSTAMANTE and SUTIN, JJ., concur.