2002-NMCA-055

46 P.3d 1270

**Ron and Jean YARGER, Plaintiffs–Appellants,**

v.

**TIMBERON WATER AND SANITATION DISTRICT, Defendant–Appellee.**

**No. 22,462.**

Court of Appeals of New Mexico.

April 4, 2002.

Charles W. Durrett, Durrett & Durrett, Alamogordo, NM, for Appellants.

Leonard J. Piazza, Regina R. Sewell, Jared Abrams, Sandenaw, Carrillo & Piazza, P.C., Las Cruces, NM, for Appellee.

## OPINION

KENNEDY, Judge.

{1} Ron and Jean Yarger (Plaintiffs) sued for a declaratory judgment concerning the authority of Timberon Water and Sanitation District (TWSD) to own and operate an airfield in Otero County. This occurred after TWSD sought to enter on Plaintiffs' land to clear an object-free zone that is mandated by Federal Aviation Administration (FAA) regulations to exist around the runway. In addition, Plaintiffs sought to have an amended restrictive covenant allowing TWSD to enter their property declared void. They appeal from the trial court's summary judgment in favor of TWSD on the issue of its authority to operate an airport. We are not persuaded that operating a public airfield is within the purview of the activities allowed to a water and sanitation district, and reverse the trial

court. Because this opinion decides the threshold issue of whether TWSD is a proper party under its enabling legislation to operate and maintain the Timberon Airfield, other questions concerning the manner in which TWSD does so, and has done so in the past, are moot, and do not need to be addressed.

## FACTS AND PROCEDURAL BACKGROUND

{2} Timberon is a planned resort community in Otero County. It was initially developed by North American Land and Developments, Inc. (NALD). Within this development is a subdivision within which the airstrip is located, called Timberon Airfield Subdivision. The subdivision is subject to restrictive covenants, including requirements on setback. Plaintiffs own two lots in the subdivision that are adjacent to the airstrip.

{3} In the 1980's NALD went bankrupt and the operations of Timberon, including the airfield, were assumed by the Timberon Property Owners Association (TPOA). TWSD is a successor to NALD and the TPOA. The airfield has been at its present location since approximately 1947, and was taken over by TWSD in 1990.

{4} TWSD's operations currently encompass a number of varied functions. It operates a water collection/distribution/filtration/treatment plant, a golf course, a swimming pool, a community center, and various parks. It also maintains its own properties, the roads in Timberon, a cemetery, and the airfield.

{5} With an eye toward improving the airfield, TWSD solicited a change in the restrictive covenants that was approved by subdivision property owners. The change amended the restrictive covenants to increase the property line setback from seventy-five feet to ninety-five feet for lots adjoining the runway. This amendment also allowed TWSD access to the setback area for clearing it to comply with FAA requirements, specifically the creation of a 250–foot object-free area clear of shrubs and trees over three inches in height. Plaintiffs objected to this as an intrusion onto their land. Further, in January 2000, TWSD had the airfield declared a public airport in order to receive federal and state funding for improvements. Maintaining the 250–foot object-free area around the runway is a requirement for funding.

{6} Plaintiffs filed a declaratory judgment action against TWSD seeking to ascertain whether a water and sanitary district has the authority to operate an airport. The court granted summary judgment in favor of TWSD. The court did not address the legality of the restrictive covenants and we do not address them in this opinion.

## DISCUSSION

{7} Summary judgment is appropriate when the parties do not dispute the facts, but only their legal effect. *Gunaji v. Macias,* 2001 NMSC 028, ¶ 8, 130 N.M. 734, 31 P.3d 1008. The district court determines as a matter of law which movant is entitled to summary judgment. *Id.* Appellate courts review matters of law de novo. *Id.* In this case, the facts are undisputed and the only question before this Court is whether TWSD possesses statutory authority to regulate, operate, and maintain an airfield. *Bd. Of Comm'rs v. Greacen,* 2000–NMSC–016, ¶ 4, 129 N.M. 177, 3 P.3d 672 (issues of statutory construction involving legal effect of undisputed facts are pure questions of law).

{8} Water and sanitation districts are special districts described by statutes and the courts as governmental subdivisions of the state with quasi-municipal powers. *See* NMSA 1978, § 73–21–9(I) (1985); *Taos Ski Valley, Inc. v. Pub. Serv. Comm'n,* 101 N.M. 738, 739, 688 P.2d 775, 776 (1984). They are also quasi-governmental corporations. Section 73–21–9(I) ("Every district shall be a body corporate with all the powers of a public or quasi-municipal corporation."). They enjoy only those powers conferred upon them by their enabling legislation, and those necessarily implied to implement those powers. *See* NMSA 1978, §§ 73–21–1, 12 (1943, as amended through 1985); *El Dorado at Santa Fe, Inc. v. Bd. of County Comm'rs,* 89 N.M. 313, 314, 551 P.2d 1360, 1361 (1976) (stating that a county, which is a political subdivision of the state, possesses only powers that are expressly granted to it by the legislature); *Dow v. Irwin,* 21 N.M. 576, 580, 157 P. 490,

491 (1916); *cf. Donalson v. San Miguel County,* 1 N.M. 263, 265–66 (1859) (holding that pursuant to statute, a county is a body politic and corporate to which the word "person" is extended, and can sue and be sued in a court of law). NMSA 1978, § 73–21–3 (1977) sets forth the permissible purposes of water and sanitation districts:

A. purchasing, acquiring, establishing or constructing waterworks to supply water for domestic, commercial and industrial purposes by any available means to persons within and without the boundaries of the district, and for this purpose any district shall have power to extend its water lines outside of the boundaries of the district for the purpose of securing a source of water supply or for the purpose of supplying such water to any lands of the United States, state of New Mexico or Indian reservations for use by any person, firm or corporation;

B. purchasing, acquiring, establishing or constructing sanitary sewers or a system or systems of sewage disposal, garbage or refuse disposal; or

C. purchasing, acquiring, establishing or constructing streets and street improvements including without limitation grades, regrades, gravel, oiling, surfacing, macadamizing, paving, crosswalks, sidewalks, driveway approaches, curbs, gutters, culverts, drains, sewers, manholes, inlets, outlets, retaining walls, bridges, overpasses, tunnels, underpasses, approaches, artificial lights and lighting equipment, parkways, grade separators, traffic separators and traffic control equipment, and all appurtenances and incidentals or any combination thereof, including real and other property therefor; or

D. establishing or constructing park and recreational improvements; or

E. all of such improvements in Subsections A through D of this section or any combination thereof within or without the district.

■ {9} The general powers of a water and sanitary district as contained in NMSA 1978, § 73–21–16(N) (1985) provide for the exercise of implied powers in furtherance of the specific powers granted by statute. To the extent that implied powers are granted to quasi-governmental corporations, these powers are to be construed in such a way as to give effect to the legislative purpose, not to expand or contract that purpose. *Alexander v. Anderson,* 1999–NMCA–021, ¶¶ 10–13, 126 N.M. 632, 973 P.2d 884 (refusing to adopt a broad interpretation of the term "agricultural use" under the Property Tax Code because such an interpretation would give greater tax relief than the legislature intended to give as evidenced by the statute's plain language). As Territorial Chief Justice Benedict phrased it, these corporations are "limited in character, yet hav[e] powers sufficient to discharge the duties imposed upon them." *Donalson,* 1 N.M. at 265. Those duties are set by statute.

■ {10} Nowhere in the Water and Sanitation District Act (WSDA) are airports, airfields, landing strips or aerodromes specifically mentioned. Any power to own and operate airfields or their equivalent must therefore be incident to the specific duties and powers required of such districts.

## Activities of "General Interest" and Implied Powers

■ {11} TWSD argues that the powers granted to water and sanitation districts are broad and incidental to the "core governmental services" which confer upon the districts "quasi-municipal" status to promote the "health, safety, prosperity, security and general welfare of the [public]." Section 73–21–1. TWSD can certainly construct water and sewer systems and streets. TWSD also properly maintains that it has authority to "establish or construct parks and recreational improvements." TWSD recognizes that its powers derive from statute. They argue that there is either no limitation on their powers to operate an airfield or that those powers are implied.

{12} TWSD asserts that it is a "general purpose public entity with broad authority." To support this contention, it cites to authority that assesses whether a quasi-governmental entity is of general or special "interest." The authority to which it cites points more clearly to the difference between a legislative

purpose and the nature of the public's interest in the conduct of the entity's business. In *Lower Valley Water & Sanitation District v. PNM,* 96 N.M. 532, 537, 632 P.2d 1170, 1175 (1981), the Supreme Court found Lower Valley to be of "general, not special, interest" for purposes of determining the right to vote among persons affected by the district's creation. The Lower Valley Water and Sanitation District (LVWSD) did not seek to operate beyond providing water and sewer services. *See id.* at 533–34, 632 P.2d at 1171–72. These services were considered important enough (of "general interest" to voters) to trigger voting rights for constituents. *See id.* at 537, 632 P.2d at 1175. This part of the case is therefore inapposite to the present situation, although the case is not. LVWSD argued, as TWSD argues here, that the general welfare of the people in the district supported the expansion of the right to tax for its services to all persons in the district rather than only those receiving its services. *Id.* at 535, 632 P.2d at 1173. Rather than adopt such an expansive view, the Supreme Court affirmed the trial court's limitation of LVWSD's powers stating, "[b]road considerations of community health and welfare cannot be invoked to override the specific considerations set out by the Legislature." *Id.* Thus, LVWSD's assertion that it operated to promote the "general welfare" was found to be subservient to the legislative framework for water and sanitation districts.

■ {13} Likewise, TWSD's reliance on *Hughes v. Timberon Water & Sanitation District,* 1999–NMCA–136, 128 N.M. 186, 991 P.2d 16, is misplaced. The *Hughes* court, while recognizing that the statutorily limited purposes of a water and sanitation district is "to purchase, acquire, establish or construct (a) waterworks; (b) sanitary sewers or other systems for disposal of sewage, garbage, or refuse, (c) streets and street improvements; and (d) park and recreational improvements" held that water and sanitation district elections are of general interest meaning that any person living within the district can vote in the district's elections. *Id.* ¶¶ 2, 5. Thus, although the function of a district may be sufficiently of general interest to persons in the district to give them the right to vote on matters concerning the district, the public's

interest is quite different from the purpose of the district itself. The functions of a district are limited to only those conferred on it by statute to fulfill its functions of providing water, sewer, street and park or recreational improvements.

{14} TWSD's argument that operating an airfield constitutes a "core governmental service" therefore fails. By the terms of the WSDA, water and sanitation districts possess only the "purposes and powers provided in this act." Section 73–21–1. This is not determined by the quality of public interest in the service, but by the powers and purposes within the Act itself. Thus, if TWSD can own and operate this airfield, the power to do so will have to come specifically from its enabling legislation, not from the fact that certain other of its legitimate functions promote the general public interest.

### Airports and Governmental Powers

{15} Under the Municipal Airport Zoning Act, the power to enter onto land to remove obstructions and hazards to insure the safe use of a landing field, as well as the power to acquire land incident to that purpose, is conferred on any "municipality or political subdivision which is authorized by law to establish and maintain an airport or landing field." NMSA 1978, § 3–39–25 (1965). If nothing else, this illustrates that public entities must be authorized by law to operate an airport or landing field. Counties and municipalities are specifically authorized by statute to do so, *see* NMSA 1978, § 4–38–31 (1949) and NMSA 1978, § 3–39–4 (1969). The lack of other express authorization leaves TWSD out of the list of those entitled to operate an airport. Furthermore, the authorization for municipalities to establish airports also specifically provides for their enactment of ordinances, rules and regulations to promote the "safety, health, prosperity, morals, order, comfort, convenience or welfare of the inhabitants of the municipality ... all with respect to its airport or any of its airport facilities either inside or outside the limits of the municipality." Section 3–39–4(F). The promotion of these general public purposes by municipalities are specifically granted by the legislature, with specific reference to air-

ports. In addition, the water and sanitation district statute does not mention any auxiliary powers which could be interpreted to support ownership and operation of an airport or landing strip. However, water and sanitation districts are not specifically authorized to operate airports or landing fields.

### Airports and the "Nature of Roads"

■ {16} In 1924, the City of Albuquerque tried to convince the Supreme Court that parks, for which the municipality had no authorization to issue bonds, were in the nature of public roads for which they could issue bonds. *See Bachechi v. City of Albuquerque*, 29 N.M. 572, 575, 224 P. 400, 401 (1924). The Supreme Court rejected this argument, calling the argument a "strained" and unjustifiable construction of the statute, noting that there were other specific provisions for how parks could be financed by municipalities. *Id.* TWSD maintains that their airfield is "in the nature of public roads." TWSD, however, advances beyond this metaphor to assert that they "maintain[ ] a system of roads, which includes the airfield." Its characterization of the statute as "addressing the unrelated issue of County airports" is telling. First, its argument is based upon Section 4–38–31, which is a specific enumeration of a power granted to county governments to establish airports. Second, the true purpose of the statute differs from TWSD's characterization of it. Here the legislature has emphasized the availability of the facility to the public, not the equation of an airfield to a road. The legislature did not confer upon water and sanitation districts the power to establish transportation systems or roadways. There is simply no way to stretch the concept of providing street improvements as described in Section 73–21–3(C) to include an airfield. The disparity between the law and what TWSD considers as its powers to construct "transportation systems" and "roadways" is evident. *See, e.g., Stevens v. City of Louisville*, 511 S.W.2d 228, 230 (Ky.Ct.App.1974). Contrary to its assertion, TWSD has limited powers concerning "transportation-related activities," and we determine that TWSD goes far afield from the operative word in the enabling legislation: "streets."

■ {17} An alternative implication in the WSDA is suggested by TWSD: since it has the statutory power to make park and recreational improvements, this airfield is a recreational facility. We decline to give this credence as well. If persons derive recreational value from flying into the Sacramento mountains, that recreation likely does not take place on the airstrip. The affidavits submitted to the court show that the airport facilitates recreation at other places-the Timberon golf course for people flying in, and other recreational activities elsewhere for people flying out. An airstrip is not "[indistinguishable] from a golf course" as TWSD states, or Timberon could put up landing lights at its golf course. If piloting a plane itself is recreation, most of that activity hopefully takes place above the airstrip. The airstrip itself is functional and transitive, not a recreational facility. That it facilitates access to recreational activities does not confer a recreational nature upon it. Timberon's golf course and community center easily fall into the category of recreational improvements. Even cemeteries are commonly treated as parks and recreational facilities. Calling an airfield a park or recreational improvement that is authorized by TWSD's enabling legislation, however, stretches the definition beyond breaking and ignores the other statutory pronouncements specifically enabling other public and private entities to operate and maintain airfields where water and sanitation districts possess none.

{18} This Court is concerned here with the justifications advanced by TWSD. Just because they have been running the airport does not make them the proper party to do so. Concluding that TWSD lacks the statutory grant of power to operate this facility compels us to decline to allow the extension of their statutory authorization in this manner.

### RECOGNITION BY THE NEW MEXICO AVIATION DIVISION

■ {19} According to TWSD, the New Mexico Aviation Division (the Division) has designated Timberon as a "key in its New Mexico airport system plan." Based on the designation of its airfield as a key airport by

New Mexico Aviation Division, TWSD argues that the Division determined that TWSD is an appropriate government entity to receive funding to operate and maintain a public airfield. Therefore, TWSD urges this Court to grant deference to that administrative determination. *See, e.g., Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n,* 120 N.M. 579, 583, 904 P.2d 28, 32 (1995). The Division's designation of Timberon as a "key in New Mexico airport system" has nothing to do with whether TWSD is statutorily authorized to operate the airport. The importance of an airport and who can run it are two separate questions. Second, the basis on which the Division authorizes expenditures of State funds does not require determination as to whether TWSD actually possesses the authority to operate and maintain an airfield. NMSA 1978, Section 64–1–13(C) authorizes the expenditure of money from the State aviation fund for "construction, development and maintenance of public-use airport facilities, ... including rural landing fields and airstrips." The record does not disclose whether the Division made a determination as to the status of TWSD nor did we find any authority that would direct us to give deference to that type of a decision. We consequently have no reason to change our holding that TWSD does not have the authority to operate an airport.

## RESTRICTIVE COVENANTS

{20} The trial court specifically declined to decide issues concerning the amendment or application of the restrictive covenant in a letter decision. We note that the trial court did not enter this letter decision in the record proper. Instead, TWSD submitted it as an appendix to its brief; as such it may not be considered despite the resulting inconvenience to a reviewing court. *See Westland Dev. Co. v. Saavedra,* 80 N.M. 615, 618, 459 P.2d 141, 144 (1969) ("Questions for review by an appellate court are established only by the record, and any fact not so established is not before an appellate court."). Our review of the record reveals that the trial court never addressed the issue, and we decline to address it here. Furthermore, Plaintiffs also concede in their reply brief that if this Court reverses the trial

court concerning TWSD's ability to operate an airport, the issue is moot. We agree.

## CONCLUSION

{21} Because we interpret the WSDA as giving no express or implied powers for a water and sanitation district to operate an airfield, we reverse the trial court and remand with instructions to enter judgment consistent with this opinion.

{22} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.