2004-NMCA-096

*96 P.3d 1167*

CERRILLOS GRAVEL PRODUCTS, INC., Brad Aitken, Plaintiffs–Appellees,

v.

BOARD OF COUNTY COMMISSIONERS OF SANTA FE COUNTY, Defendant–Appellant,

and

Rural Conservation Alliance, Intervenor–Appellant.

Nos. 23,630, 23,634.

Court of Appeals of New Mexico.

May 25, 2004.

Certiorari Granted, No. 28,780, Aug. 10, 2004.

Joseph Manges, Comeau, Maldegen, Templeman & Indall, LLP, Santa Fe, for Plaintiffs–Appellees.

Monica Ontiveros, County of Santa Fe, Santa Fe, Mark A. Basham, Basham & Basham, P.C., Santa Fe, for Defendant–Appellee.

Mary E. Humphrey, El Prado, for Intervenor–Appellant.

## OPINION

ALARID, J.

{1} In this case, we consider whether the Santa Fe County Board of County Commissioners (Board or the County) had the authority to suspend or revoke a mining permit it issued to Cerrillos Gravel Products, Inc. (Cerrillos Gravel). The district court ruled that the County had no authority to suspend or revoke a permit, and that any action to do so had to be filed in district court. The County appealed. We hold that, under the circumstances here, the County had the authority to suspend the mining permit, and reverse and remand to the district court.

**BACKGROUND**

{2} The record reflects that the mining company and the County have been at odds for many years. In any event, they agree that negotiations led to a 1996 settlement under which Cerrillos Gravel received a mining permit, on July 10, 1997, with twenty-four conditions. Cerrillos Gravel complied with some conditions, but, according to the County, failed to comply with others. In January 2000, the County issued a stop work order and notified Cerrillos Gravel that its permit had been revoked. The matter was set for hearing before the Board. Before the Board could meet, the parties once again engaged in negotiations designed to allow Cerrillos Gravel to continue its operations in a way that was acceptable to the County. These negotiations resulted in a memorandum of understanding. However, when the memorandum of understanding was presented to

the Board, it changed some of the provisions. Cerrillos Gravel appeared without its attorney, but a representative of the company said he thought the company would accept the changes. Cerrillos Gravel ultimately did not accept the changes, and the Board suspended the permit until certain conditions were met.

{3} Cerrillos Gravel filed an appeal in district court pursuant to Rule 1–074 NMRA 2004. During that appeal, Cerrillos Gravel persuaded the district court that the Board's suspension of its permit was invalid because the Board did not have authority to do so. The County and the Intervenor filed petitions for certiorari, which we granted.

## DISCUSSION

### A. Standard of Review

{4} Because this appeal involves statutory construction, our review is de novo. *Morgan Keegan Mortgage Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066.

### B. County Zoning Authority

#### 1. Statutes

{5} Counties are creatures of statute, and have only the power granted by the Legislature, along with those powers necessarily implied to implement the express powers. *See El Dorado at Santa Fe, Inc. v. Bd. of County Comm'rs*, 89 N.M. 313, 319, 551 P.2d 1360, 1366 (1976). A county's "power to zone can only be exercised pursuant to statutory authority and in conformity with a lawfully adopted ordinance." (citations omitted). *See State ex rel. Vaughn v. Bernalillo County Bd. of County Comm'rs*, 113 N.M. 347, 349, 825 P.2d 1257, 1259 (Ct.App.1991). Zoning statutes and ordinances are strictly construed. *Id.*

{6} Several statutes are relevant to a county's authority to revoke or suspend a mining permit. NMSA 1978, § 3–21–6(A)(1) (1981) provides that "[t]he zoning authority within its jurisdiction shall provide by ordinance for the manner in which zoning regulations, restrictions and the boundaries of the districts are . . . enforced[.]"

NMSA 1978, § 3–21–10(B) (1965) provides:

B. [I]f any building or structure is erected, constructed, reconstructed, altered, repaired, converted or maintained, or any building, structure or land is used in violation of Sections 3–21–1 through 3–21–14 NMSA 1978, or any ordinance adopted pursuant to these sections, the zoning authority may institute any appropriate action or proceedings to:

(1) prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use;

(2) restrain, correct or abate the violation;

(3) prevent the occupancy of such building, structure or land; or

(4) prevent any illegal act, conduct, business or use in or about such premises.

{7} NMSA 1978, Section 3–21–13(B), (C) (1965), entitled "Zoning enforcement by counties," provides that county ordinances "may be enforced by prosecution in the district court of the county. Penalties for violations of these ordinances shall not exceed a fine of three hundred dollars ($300) and imprisonment for ninety days, or both." Section 3–21–13(C) provides that the "district attorney and sheriff shall enforce these ordinances." Section 3–21–13(B) is similar to NMSA 1978, § 4–37–3(A) (1993) providing that county ordinances "may be enforced by prosecution for violations of those ordinances in any court of competent jurisdiction," and that penalties may not exceed $300 or ninety days imprisonment, or both. *Id.*

{8} Consequently, we are faced with several statutes that present different interpretations of a county's power in this context. Sections 3–21–6 and –10(B) grant counties broad power to enact ordinances to determine how their ordinances are enforced, and to "institute any appropriate action or proceedings" to prevent and abate violations.

{9} Against these two broad statutes are two statutes providing that violations of county ordinances may be prosecuted in district court by the district attorney or sheriff, and limit the penalties that may be imposed to a nominal fine of $300, and imprisonment not to exceed ninety days, or both. *See* § 3–21–13; § 4–37–3(A). Cerrillos Gravel relies

heavily on these two statutes to support its position that district court is the only permissible venue, arguing that these statutes are more specific.

{10} When multiple statutes cover the same subject matter we attempt to harmonize them if possible. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599; *State ex rel. Quintana v. Schnedar*, 115 N.M. 573, 575–76, 855 P.2d 562, 564–65 (1993). It is possible to do so here. The two statutes on which Cerrillos Gravel relies both provide that violations of ordinances "may be enforced by prosecution" in "court." § 4–37–3(A); § 3–21–13(B). The word "may" is permissive, and is not the equivalent of "shall," which is mandatory. *See Gandy v. Wal–Mart Stores, Inc.*, 117 N.M. 441, 442–43, 872 P.2d 859, 860–61 (1994) (stating canon of construction that "shall" is mandatory and "may" is permissive). We believe the Legislature's use of the word "may" is carefully chosen to express the intention that a quasi-criminal prosecution, with attendant criminal fines and imprisonment, is one option available to a county, in addition to other remedies. *See City of Santa Fe v. Baker*, 95 N.M. 238, 241, 620 P.2d 892, 895 (Ct.App.1980) (noting that "[p]rosecution for violation of a municipal ordinance is a quasi-criminal proceeding"). Sections 3–21–13(B) and 4–37–3(A) do nothing more than recognize that, as a quasi-criminal prosecution, court would be the appropriate venue, and the district attorney and the sheriff would be the appropriate prosecutorial entity. Reading the statutes in this way gives the proper effect to the words "may," and "shall," in Section 3–21–13, and harmonizes Sections 3–21–6, –10, and –13 in a way that gives effect to each one.

{11} But we disagree that Sections 4–37–3 and 3–21–13 provide the only remedy. It would be unreasonable to conclude that a county, faced with illegal land use, including violations that might endanger the health and safety of the public, would be limited solely to seeking criminal prosecution in court with a limitation of a nominal fine ($300), or ninety days imprisonment, or both. Such a limitation would allow the illegal use to continue, even at risk to the health and safety of the public. We have not recognized such a strict limitation on the remedy, and have recognized that, in addition to criminal prosecution, a county has the option to pursue an injunction, or file an abatement action, in district court. *See Vaughn*, 113 N.M. at 351, 825 P.2d at 1261 (noting that, when confronted with violations of zoning laws, a board may seek an injunction, file an abatement action, or pursue penalties in quasi-criminal proceedings).

### 2. Ordinances

{12} Cerrillos Gravel persuaded the district court that *Vaughn* determined the result here. There, we held that the Bernalillo County Board of County Commissioners had no authority to revoke a special use permit. *Id.* at 351, 825 P.2d at 1259. Our decision in *Vaughn* was based on the rationale that "nothing in the applicable statute or ordinance specifically allows for the cancellation" of special use permits. *Id.* at 350, 825 P.2d at 1260. In *Vaughn* we carefully scrutinized the applicable county ordinances for authorization to revoke a special use permit, and found none. *Id.* at 349–50, 825 P.2d at 1259–60.

{13} However, in contrast to *Vaughn*, the Land Development Code (the Code), Santa Fe County, N.M., Ordinance 1996–10 (1996), specifically allows for revocation of a mining permit. Section 1.11(A) of the Code provides that failure to comply with the Code shall subject a mining operation to penalties, and expressly states that "[p]enalties may also include suspension or revocation of the . . . mining land use permit." It further provides that "[t]he penalties in this paragraph will be imposed only after a hearing before the board." [*Id.*] Consequently, this case is distinguishable from *Vaughn* because Santa Fe County has an ordinance specifically providing for cancellation or suspension of a mining permit, and has provided that such an action may occur administratively.

{14} Our analysis is not confined solely to determining whether the County has enacted an ordinance allowing it to suspend or revoke a mining permit. The ordinance must "be authorized by statute." *Burroughs v. Bd. of County Comm'rs*, 88 N.M. 303, 304,

540 P.2d 233, 234 (1975). Below, Cerrillos Gravel persuaded the district court that *Vaughn*, combined with the lack of any statutory language referring to "revoking" mining permits, meant that the Board had no authority to suspend its permit. Cerrillos Gravel continues that theme here, making several arguments that the statutes do not mention suspending or revoking permits. It argues that Section 3–21–13 does not contain language allowing suspension or revocation of a permit, and therefore that remedy is unauthorized. It suggests that Section 3–21–13 is the only statute addressing "penalties." It argues that because revocation of a permit is not listed as a penalty, it is unauthorized. Cerrillos Gravel also argues that Section 3–21–10(B)'s grant of authority to "prevent" or "restrain" illegal use of land cannot include an administrative action to revoke a mining permit. It contends that, at most, the authority would be limited to pursuing an injunction in district court.

■ {15} We disagree with these arguments because we are not persuaded that the absence of language including "revocation of any permit" in the enabling statutes requires us to hold that such authority is not authorized. Our law does not require that an ordinance precisely track the enabling statute, to be authorized. *See City of Santa Fe v. Gamble–Skogmo, Inc.*, 73 N.M. 410, 412–15, 389 P.2d 13, 16–18 (1964) (holding that an ordinance creating an historical district and requiring new buildings harmonize with existing structures was within the scope of the enabling statute allowing municipalities to zone consistently with a comprehensive plan " 'to promote the health and general welfare.' "); *cf. Gould v. Santa Fe County*, 2001–NMCA–107, ¶¶ 18–19, 131 N.M. 405, 37 P.3d 122 (noting that "[a]n ordinance may duplicate or complement statutory regulations" so long as it does not permit "an act the general law prohibits, or prohibits an act the general law permits") (internal quotation marks and citation omitted). The Legislature often enacts laws with a broad sweep, and cannot be fairly expected to expressly address every eventuality. *See Investment Co. v. Reese*, 117 N.M. 655, 661, 875 P.2d 1086, 1092 (1994) (stating that "[i]t is futile to expect statutory codes to be all-encompassing and to anticipate every eventuality"); *Hughes v. Timberon Water & Sanitation Dist.*, 1999–NMCA–136, ¶ 17, 128 N.M. 186, 991 P.2d 16 (stating that we do not assume that the Legislature writes statutes with exquisite attention to detail).

{16} Allowing the Legislature to paint with a broad brush, and to leave the details to local governmental entities, is reflected in the enabling statute, which grants counties the authority to pass ordinances defining how their land use ordinances may be enforced. *See* § 3–21–6. The Legislature has also used broad language empowering a county to "prevent," "restrain," "abate," and "correct" zoning violations. We read that language to reasonably include the authority to revoke permission to pursue the illegal activity, so long as a county has enacted an ordinance providing revocation as a penalty. The fact that the broad enabling legislation does not expressly authorize "suspension" or "revocation" of a mining permit does not require us to conclude that the Santa Fe County ordinance is beyond the authority granted by the Legislature.

{17} Cerrillos Gravel makes yet another argument based on *Vaughn*. The argument begins with the premise that *Vaughn* establishes an absolute prohibition on counties revoking a permit. The argument then relies on the rule of statutory construction that the Legislature is presumed to have knowledge of existing case law when it amends statutes. *See State ex rel. Stratton v. Roswell Indep. Schs.*, 111 N.M. 495, 502–03, 806 P.2d 1085, 1092–93 (Ct.App.1991). Cerrillos Gravel argues that Sections 31–21–10(B) and –13 have not been changed since *Vaughn*, and, therefore, the Legislature must be presumed to be content with *Vaughn's* purported absolute prohibition on counties revoking permits.

■ {18} We reject this argument. As we have discussed, *Vaughn* does not hold that a county may never revoke a land use permit. It only holds that, under the facts there, the county could not do so. Moreover, legislative inaction is a tenuous guide to legislative intent. *See Perry v. Williams*, 2003–NMCA–084, ¶ 15, 133 N.M. 844, 70 P.3d 1283. Consequently, we disagree with Cer-

rillos Gravel's argument that legislative inaction since *Vaughn* establishes the Legislature's view that counties have no power to revoke land use permits.

{19} Finally, Cerrillos Gravel contends that even if there is an ordinance providing for suspension of a permit, the penalty provision does not apply to it because it qualifies as "an existing mining use" under the Code. It relies on language in Section 1.10(A) of the Code stating that an existing mining use "shall not be subject to the requirements of this Ordinance except as follows ...." Section 1.10 then imposes requirements on existing mining uses, including the requirement of a reclamation plan, and submission of various descriptions of current information concerning water, vegetation, wildlife, and the mining operation. In construing county zoning ordinances, we apply the same rules of construction that we use when we construe statutes. *See Burroughs*, 88 N.M. at 306, 540 P.2d at 236. We construe ordinances so as to accomplish the means sought to be accomplished, and will not read into an ordinance language that is not there, particularly if it makes sense as written. *Id.*

{20} Although the Code requires existing mining uses to comply with fewer requirements than those applicable to a new mine, an existing mining use is still subject to Code requirements. *See* the Code § 1.10. Even assuming that Cerrillos Gravel's operation is an "existing mining use," we reject its argument that the Code's penalty provision would not apply to it. Even if it were excused from some "requirements" applicable to new mines, "penalties" are not "requirements." Under Cerrillos Gravel's view, the Code imposes requirements on "existing mining uses," but the penalty provision would not apply if the operator did not comply with those requirements. We see nothing in the Code that would prohibit the application of penalties to an operator, including an operator of an "existing mining use," who failed to comply with the applicable requirements. Rather, the Code's plain language provides that "[f]ailure to comply" with the Code shall subject the mining operator to penalties, and the penalty section contains no language suggesting that it applies only to new mines. *See* the Code, § 1.11(A). We conclude that

Cerrillos Gravel's interpretation of the Code is unsupported by the language in the ordinance and is unreasonable. *See Burroughs*, 88 N.M. at 306, 540 P.2d at 236 (stating that we follow the plain language of an ordinance, and will not read language into it if it makes sense as written).

{21} For all of these reasons, we conclude that Santa Fe County's ordinance specifically providing for revocation or suspension of a mining permit, and suspension of the permit, are consonant with the Legislature's grant of power to pass ordinances defining how land use ordinances may be enforced, *see* § 3–21–6, and within the Legislature's grant of authority to institute "any appropriate action or proceedings" to confront violations of land use ordinances. § 3–21–10(B). Consequently, the County had the authority to enforce its ordinance administratively and suspend Cerrillos Gravel's mining permit.

{22} Once a permit is suspended or revoked, it may be the case that the zoning authority must invoke the power of the district court, by seeking an injunction or by filing an abatement action, against an entity that continues to conduct activities under a suspended or revoked permit. A quasi-criminal proceeding under Section 3–21–13 is another available option. But, we disagree with Cerrillos Gravel's argument that the County had no authority to administratively suspend the mining permit it granted.

### C. Vested Rights

{23} Cerrillos Gravel argues that, having obtained a permit, and having expended substantial sums of money developing its mine, it has a "vested right" to continue mining, that cannot be subsequently withheld, extinguished, or modified. The "vested right" doctrine has been recognized in our law. *See El Dorado*, 89 N.M. at 319, 551 P.2d at 1366. There, the Court held that a property owner's right to develop his subdivision vested after he had complied with the statutory prerequisites and obtained a determination from the county that he had complied, and that the county could not later attempt to change its position and deny approval. That situation calls for an equitable decision that the property owner is protected. However, this case is nothing

like *El Dorado*. Cerrillos Gravel has not relied to its detriment and then had the County change its position. It cannot now argue that it need not comply with them because it expended substantial sums of money and can now continue unfettered without complying with them. If the "vested right" doctrine were as broad as Cerrillos Gravel contends, any entity with a permit from the government could expend money, and then operate in any fashion it chose, and be immunized from governmental attempts to revoke permission or force compliance with permit conditions and the law, including laws designed to protect public health, welfare, and safety. That view cannot be sustained. We reject the argument that Cerrillos Gravel has a "vested right" to continue to operate without complying with legitimate conditions imposed by the County.

### D. Other Issues

{24} Finally, Cerrillos Gravel offers us several other reasons why we should affirm. It argues that suspension of the permit was not accompanied by due process, and was not supported by the evidence. We do not address these issues because they were not reached by the district court. Once the district court ruled that the County had no authority to revoke the permit, the court did not reach any of the other issues raised in the case. Because the district court considered the case as an appellate court, under Rule 1-074, we believe it is appropriate to remand this case for the district court to consider the other issues in the first instance. *See Buffett v. Vargas*, 1996-NMSC-012, ¶ 7, 121 N.M. 507, 914 P.2d 1004 (determining that, after deciding the key issue on certiorari, Supreme Court would remand to the court of appeals for consideration of other issues raised in the appeal).

{25} For these reasons, we reverse the decision of the district court, and remand for further proceedings.

{26} **IT IS SO ORDERED.**

BUSTAMANTE and VIGIL, JJ., concur.