2005-NMSC-023

117 P.3d 932

**CERRILLOS GRAVEL PRODUCTS, INC., and Brad Aitken, Plaintiffs–Petitioners,**

v.

**BOARD OF COUNTY COMMISSIONERS OF SANTA FE COUNTY, Defendant–Respondent,**

and

**Rural Conservation Alliance, Intervenor–Respondent.**

No. 28,780.

Supreme Court of New Mexico.

July 18, 2005.

Comeau, Maldegen, Templeman & Indall, L.L.P., Joseph E. Manges, Santa Fe, NM, for Petitioners.

Basham & Basham, P.C., Mark A. Basham, Office of the County Attorney, Stephen C. Ross, Santa Fe, NM, for Respondent Board of County Commissioners.

Humphrey & Ode, P.C., Connie Ode, Mary E. Humphrey, El Prado, NM, for Respondent Rural Conservation Alliance.

## OPINION

BOSSON, Chief Justice.

{1} The Santa Fe County Board of County Commissioners (Board or County) voted to suspend a mining use permit the County had previously issued to Cerrillos Gravel Products, Inc. (Cerrillos Gravel). On appeal, the district court ruled that the County did not have statutory authority to suspend or revoke the permit in an administrative hearing, but instead had to seek relief in district court, such as filing for an injunction or an abatement. The County appealed to the Court of Appeals, which reversed. We accepted certiorari and now affirm the Court of Appeals, upholding the County's statutory authority to suspend or revoke Cerrillos Gravel's mining use permit for non-compliance.

## BACKGROUND

{2} On July 8, 1997, the Board approved a permit, subject to twenty-four conditions, to allow Cerrillos Gravel to mine gravel near Cerrillos, New Mexico. In February 1998, the County notified Cerrillos Gravel that it had failed to comply with some of the permit conditions. In January 2000, the County issued a stop work order and notified Cerrillos Gravel that its permit would be suspended until the mining operation was brought into compliance. The County scheduled a public hearing on the proposed suspension during the Board's regular meeting on January 25, 2000. Before the public hearing, County staff met with representatives of Cerrillos Gravel, including its attorney, to negotiate a plan to allow Cerrillos Gravel to continue its mining operation. The negotiations resulted in a memorandum of understanding, which addressed several of the alleged violations, including mining outside the three-acre permit area and not having sufficient water rights for dust control and reclamation. The agreement was subject to ratification by the Board.

{3} During the public hearing, the Board allowed each speaker two minutes to address the permit. Most witnesses were strongly opposed to Cerrillos Gravel's operations and testified that the mine should be permanently closed due to dust, noise, and traffic. Cerrillos Gravel appeared without its attorney. Its representative, who was given the same two minutes to address the Board as every other speaker, requested that the memorandum of understanding be ratified. After listening to testimony, the Board changed some of the provisions of the agreement, and voted unanimously to suspend the permit unless Cerrillos Gravel agreed to the modified memorandum of understanding. Cerrillos Gravel's representative said he thought the company would accept the changes. The County suspended the permit until the conditions were met.

{4} Instead of accepting the modified memorandum, Cerrillos Gravel appealed the Board's decision to the district court pursuant to Rule 1–074 NMRA 2005. The district court concluded that the Board did not have the statutory authority to suspend or revoke Cerrillos Gravel's mining permit. According to the district court, the County only had the statutory authority to pursue relief in district court such as seeking an injunction or abatement. Because of its ruling on the Board's lack of statutory authority, the district court never determined whether the decision to suspend the permit was supported by substantial evidence.

{5} The Court of Appeals granted certiorari to the County and an intervenor, Rural Conservation Alliance, and reversed. *See Cerrillos Gravel Prods., Inc. v. Bd. of County Comm'rs,* 2004–NMCA–096, ¶ 1, 136 N.M. 247, 96 P.3d 1167. The Court of Appeals held that the County did have authority to administratively suspend a mining permit and rejected the argument that Cerrillos Gravel has a vested right to operate without complying with the County's conditions. *Id.* ¶¶ 22–23. The court ordered the case remanded for the district court to consider whether the Board's decision to suspend the permit was supported by the evidence and accompanied by due process. *Id.* ¶ 24. We granted certiorari. We now address whether the Board had the authority to suspend or revoke Cerrillos Gravel's mining permit.

## DISCUSSION

### Standard of Review

{6} As a matter of law, we interpret zoning laws de novo, using the same rules of construction that we use for interpreting statutes. *Smith v. Bd. of County Comm'rs,* 2005–NMSC–012, ¶ 18, 137 N.M. 280, 110 P.3d 496.

### The County's Zoning Enforcement Authority

{7} Counties possess those powers expressly granted by the Legislature, as well as those necessarily implied to implement express powers. *El Dorado at Santa Fe, Inc. v. Bd. of County Comm'rs,* 89 N.M. 313, 317, 551 P.2d 1360, 1364 (1976). A county's authority to zone "can only be exercised pursuant to statutory authority and in conformity with a lawfully adopted ordinance." *State ex rel. Vaughn v. Bd. of County Comm'rs,* 113 N.M. 347, 349, 825 P.2d 1257, 1259 (Ct. App.1991).

{8} The parties do not dispute that the Legislature delegated to counties the statutory authority to zone. The Zoning Act (Act) affords counties a comprehensive scheme to regulate land use as a way to protect public health, safety, and welfare. *See* NMSA 1978, §§ 3–21–1 to –14 (1965, as amended through 1995). Pursuant to the Act, counties may adopt zoning ordinances. *See* § 3–21–2(A). Santa Fe County did so by enacting several land use ordinances now compiled as a unified land development code. *See* Santa Fe, N.M., Santa Fe County Land Dev.Code, Ordinance 1996–10 (Sept. 10, 1996) (Land Development Code or Code). The Code includes Article XI, "Zoning for Extraction of Construction Materials," which was originally adopted in 1992 to regulate sand and gravel mining. Against this backdrop of general zoning authority, we now examine the statutes and ordinances that address the County's power to *enforce* that zoning authority.

{9} Three sections of the Zoning Act are relevant to our inquiry. First, Section 3–21–6(A)(1) provides that "[t]he zoning authority within its jurisdiction shall provide by ordinance for the manner in which zoning regulations, restrictions and the boundaries of the district are ... enforced." Next, Section 3–21–10(A) provides that "any ordinance adopted pursuant to [Sections 3–21–1 through 3–21–14] shall be enforced ... as municipal ordinances are enforced." As part of that statute, Section 3–21–10(B) provides:

In addition, if any building or structure is erected, constructed, reconstructed, altered, repaired, converted or maintained, or any building, structure or land is used in violation of Sections 3–21–1 through 3–21–14 NMSA 1978, or any ordinance adopted pursuant to these sections, the zoning authority may institute any appropriate action or proceedings to:

(1) prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use;

(2) restrain, correct or abate the violation;

(3) prevent the occupancy of such building, structure or land; or

(4) prevent any illegal act, conduct, business or use in or about such the premises.

Last, Section 3–21–13(A) provides that counties may enact ordinances to carry out the authority granted to them to regulate building and zoning "the same as a municipality." Section 3–21–13(B) provides that county ordinances "*may* be enforced by prosecution in the district court of the county. Penalties for violations of these ordinances *shall* not exceed a fine of three hundred dollars ($300) or imprisonment for ninety days, or both." (Emphasis added.) Section 3–21–13© provides that "[t]he district attorney and sheriff *shall* enforce these ordinances." (Emphasis added.)

{10} Cerrillos Gravel relies heavily on the latter section of the Act, Section 3–21–13, to support its argument that the district court is the exclusive venue in which the County may enforce zoning violations. Despite the word "may" first used in Section 3–21–13(B), Cerrillos Gravel argues that the use of "shall" in Sections 31–21–13(B) and -©, with respect to fines and prosecution by the district attorney and sheriff, mandates enforcement by direct action in court and not by suspension or revocation of a permit. As Cerrillos Gravel notes, Section 3–21–13(B) is similar to NMSA 1978, § 4–37–3(A) (1993), which addresses the general authority of counties to enforce county ordinances by taking a direct action in court. Section 4–37–3(A) provides that "[c]ounty ordinances may be enforced by prosecution for violations of those ordinances in any court of competent jurisdiction," and that penalties may not exceed three hundred dollars ($300) or ninety days imprisonment or both. In addition, Section 3–21–10(A) directs that the Zoning Act, and any ordinances adopted pursuant to the Act, shall be enforced "as municipal ordinances are enforced." Cerrillos Gravel points out that municipal ordinances are enforced by direct action in municipal court. *See* NMSA 1978, § 3–17–1© (1993). Thus, Cerrillos Gravel contends, the only statutory remedy available to the County to address zoning violations requires a sheriff or district attorney to bring an action in court, and the only possible penalties are a nominal monetary fine and up to ninety days in jail.

{11} We do not agree with Cerrillos Gravel that the County's enforcement au-

thority is dictated exclusively by Section 3–21–13. In addition to Section 3–21–13, Sections 3–21–6 and 3–21–10(B) address the County's power to enforce its zoning regulations. As the Court of Appeals correctly held, these two sections "grant counties broad power to enact ordinances to determine how their ordinances are enforced, and to 'institute any appropriate action or proceedings' to prevent and abate violations." *Cerrillos Gravel*, 2004–NMCA–096, ¶ 8, 136 N.M. 247, 96 P.3d 1167 (quoting Section 3–21–10(B)). Rather than interpret Section 3–21–13 as a specific statute that prevails over a general statute, as Cerrillos Gravel urges us to do, we agree with the Court of Appeals that it is possible to harmonize all the statutes concerning the County's enforcement powers. *See Cerrillos Gravel*, 2004–NMCA–096, ¶ 10, 136 N.M. 247, 96 P.3d 1167.

■ {12} As the Court of Appeals observed, the Legislature specifically provided that violations of ordinances *"may* be enforced by prosecution" in court. *Id.* ¶ 7 (emphasis added); *see* § 3–21–13(B); § 4–37–3(A). By using the word "may," instead of "shall," the Legislature indicated it was being permissive, granting the County discretionary authority to enforce violations of ordinances by quasi-criminal prosecution subject to fines and imprisonment. *Cerrillos Gravel*, 2004–NMCA–096, ¶ 10, 136 N.M. 247, 96 P.3d 1167. Thus, under those specific statutes allowing for a quasi-criminal prosecution, it would be proper for a sheriff or district attorney to enforce violations in court.

■ {13} However, Sections 3–21–13 and 4–37–3 do not provide the sole remedy for violations of county ordinances. Rather, we ascribe greater importance to the County's broad authority to "provide by ordinance for the manner in which zoning regulations" shall be enforced. Section 3–21–6(A). We agree with the County that Section 3–21–6 suggests legislative intent to allow counties to prescribe their own means of enforcing zoning ordinances, including at the administrative level. In Section 3–21–6, the Legislature granted counties the express authority to enact ordinances to provide for enforcement of zoning regulations and restrictions. Pursuant to this broad statutory authority,

the County passed a comprehensive zoning ordinance that expressly allows the Board to issue *and suspend* mining permits, and further provides that such actions may occur administratively. *See* Santa Fe, N.M., Santa Fe County Land Dev.Code art. XI, § 1.11(A), (B) (1996) (providing that failure to comply with the Code shall subject the mining operation to penalties, which may include suspension or revocation of the mining land use permit, and which "will be imposed only after a hearing before the board"). Thus, the County had the specific statutory authority to choose how it would enforce its land use ordinances, and the County chose an ordinance prescribing the very administrative course of action it pursued in this case.

■ {14} It is clearly within the scope of the County's statutory authority to provide that suspension and revocation may occur administratively, after a hearing before the Board. The broad enabling legislation need not expressly authorize suspension or revocation as long as those actions are consistent with the statutory authority to enforce zoning regulations. *See City of Santa Fe v. Gamble–Skogmo, Inc.,* 73 N.M. 410, 412–15, 389 P.2d 13, 16–18 (1964) (holding that an ordinance creating an historical district and requiring new buildings to harmonize with old ones was within the scope of the enabling statute allowing municipalities to zone consistently with a comprehensive plan to promote the general health and welfare).

{15} In addition to Section 3–21–6, Section 3–21–10 indicates that the Legislature intended to delegate broad authority to counties to enforce their zoning ordinances. While Section 3–21–10(A) speaks of enforcing the Zoning Act "as municipal ordinances are enforced," which includes direct action in court, that method is not exclusive. "In addition," as Section 3–21–10(B) provides, counties "may institute any appropriate action or proceedings" to prevent unlawful land use and zoning violations. The language of this section indicates that the Legislature did not intend to limit enforcement to criminal proceedings, but rather that Section 3–21–13 simply provides one alternative for enforcement. Cerrillos Gravel argues that the Legislature only intended Section 3–21–10(B) to

provide for injunction or abatement actions in court, as opposed to administrative action, but we are not persuaded. The language of the section does not support such a narrow construction.

{16} Further, the County argues its right to impose conditions upon permit approval necessarily implies the right to revoke approval when those conditions are not satisfied. We agree. Statutes may confer authority either expressly or by necessary implication. *See El Dorado*, 89 N.M. at 317, 551 P.2d at 1364 (stating counties possess those powers expressly granted by statute as well as those necessary to implement those express powers). We agree that the power to revoke a permit is necessarily implied from the power to approve a permit.

{17} As our analysis of the relevant statutes and ordinances indicates, we are persuaded that the Legislature delegated broad power to the County to enforce the zoning ordinance, which the County exercised in conformity with a lawfully adopted ordinance. Cerrillos Gravel argues that this holding is inconsistent with *Vaughn*, which Cerrillos Gravel contends stands for the proposition that revocation of a zoning permit is beyond the scope of the Board's authority in all instances. Although the Court of Appeals correctly rejected this interpretation, we find it necessary to clarify the distinction.

{18} In *Vaughn*, the Court of Appeals examined whether the Bernalillo County Board of County Commissioners had authority to revoke a special use permit that was granted for life. 113 N.M. at 348, 825 P.2d at 1258. In Bernalillo County, a specific ordinance provided for cancellation of a special use permit only in the event the use was discontinued. *Id.* at 349–50, 825 P.2d at 1259–60. Because the revocation was not based on discontinuance, the Court of Appeals found no authority to revoke the special use permit based on other reasons. *Id.* at 350, 825 P.2d at 1260. Thus, the *Vaughn* court held that "nothing in the applicable statute or ordinance specifically allows for the cancellation" of a special use permit that was granted for life. *Id.*

{19} Cerrillos Gravel argues that *Vaughn* establishes an absolute prohibition on permit revocations by counties. Disagreeing with that argument, the Court of Appeals interpreted *Vaughn* as standing for the proposition that a county could revoke a land use permit but only under certain circumstances. *See Cerrillos Gravel*, 2004–NMCA–096, ¶ 18, 136 N.M. 247, 96 P.3d 1167. The Court of Appeals distinguished *Vaughn* from this case on grounds that Santa Fe County has an ordinance that specifically provides for suspension or cancellation of a mining permit, and further provides that such an action may occur administratively. *Id.* ¶ 13, 825 P.2d 1257.

{20} We agree that *Vaughn* did not establish a broad rule that a county may never revoke a land use permit. We add to this analysis, however, by emphasizing that Bernalillo County clearly went beyond its limited authority in *Vaughn*, while Santa Fe County has broad authority in the case before us. The *Vaughn* court never determined that Bernalillo County lacked authority to enact an ordinance with a revocation provision, only that the county did not act in conformance with the specific provisions of the existing ordinance. Unlike the situation in *Vaughn*, the ordinance at issue in this case does not contain an express statement denying enforcement power to the County. Thus, unlike *Vaughn*, Santa Fe County suspended the permit pursuant to statutory authority and in conformance with a lawfully adopted ordinance.

{21} In conclusion, we hold that the County's ordinance providing for suspension or revocation of a mining permit is consistent with the statutory authority granted by the Legislature to pass ordinances defining how land use ordinances will be enforced. *See* § 3–21–6. The ordinance is also consistent with the statutory authority vested in the County to institute "any appropriate action or proceedings" to confront violations of land use ordinances. *See* § 3–21–10(B). As a result, the County had the authority to enforce its ordinance administratively and suspend Cerrillos Gravel's mining permit.

**Vested Rights**

{22} Cerrillos Gravel also argues that it has a "vested right" to continue its mining

operation, and therefore the County could not suspend its permit. Cerrillos Gravel bases this argument on the longstanding use of its property for mining purposes. Cerrillos Gravel claims it has made substantial investment in developing its operation in reliance on a 1984 permit obtained by previous owners. Thus, Cerrillos Gravel contends its mining operation is an "existing use" not subject to regulations passed after the issuance of its 1984 permit, including the 1992 zoning ordinances that specifically govern gravel mining. *See* Land Dev.Code art XI, § 1.10(B).

{23} We do not agree that the vested rights doctrine, recognized in *El Dorado*, 89 N.M. at 319, 551 P.2d at 1366, prevents the County from enforcing its regulations and restrictions on existing mines. Under the plain language of the Land Development Code, a mining operation is subject to penalties for "[f]ailure to comply." *See* Land Dev. Code art. XI, § 1.11(A). No language indicates the penalty provision applies only to new mines. *See Burroughs v. Bd. of County Comm'rs*, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975) (stating that reviewing courts construe ordinances according to the plain language, and will not add language if an ordinance makes sense as written). Therefore, even if the operation is an "existing use," the Code's penalty provisions still apply. *Id.*

{24} Cerrillos Gravel assumes nonetheless that, once it received its permit, it was immune from complying with subsequent ordinances, even when enforced by the prospective remedy of suspension or revocation. We disagree. Cerrillos Gravel does not have a vested right to ignore laws designed to protect public health, welfare, and safety. The Court of Appeals was correct to "reject the argument that Cerrillos Gravel has a 'vested right' to operate without complying with legitimate conditions imposed by the County." *Cerrillos Gravel*, 2004–NMCA–096, ¶ 23, 136 N.M. 247, 96 P.3d 1167.

## Due Process

{25} As a final point, Cerrillos Gravel claims its procedural due process right to be heard was compromised by the nature of the Board's hearing. Cerrillos Gravel emphasizes that its representative was given only two minutes to be heard at the hearing on this significant matter affecting capital investment of more than $840,000 in an ongoing enterprise. While others who spoke up at the hearing were also allowed only two minutes, most were opposed to the mining operation. Thus, Cerrillos Gravel contends its two minutes were insufficient, and perhaps unfairly drowned out by the opposition. In addition, Cerrillos Gravel claims its due process rights were impinged because it was not given an opportunity to cross-examine witnesses.

{26} In response, the County argues not only that Cerrillos Gravel failed to properly preserve any due process issues, but also that these issues were waived by Cerrillos Gravel's own actions at the hearing. The County argues that the company's representative chose to speak for less than two minutes, which was followed by a question and answer session that lasted several minutes. The County further asserts that Cerrillos Gravel never requested discovery, additional time to speak, or an opportunity to cross-examine witnesses, and therefore Cerrillos Gravel waived any due process claim.

{27} We decline to address the due process issue at this time because it is not properly before us. *See Ramirez v. City of Santa Fe*, 115 N.M. 417, 418–19, 852 P.2d 690, 691–92 (Ct.App.1993) (declining to address issues presented in a zoning case because the district court had not passed on them and courts do not issue advisory opinions). The district court did mention in its discussion of the administrative proceeding that Cerrillos Gravel had not been given an adequate opportunity to review or submit evidence in response to the County's suspension order. However, after the district court determined that the County did not have authority to suspend the permit, the court did not consider the remaining issues in the case. Therefore, it is appropriate to remand this issue to the district court to determine whether Cerrillos Gravel was afforded due process at the hearing. *See* Rule 1–074 (providing for district court review of administrative proceedings). For the same reason, because it was not considered below, the dis-

trict court may consider on remand whether suspension of the permit was supported by the evidence.

{28} We offer no opinion on whether the due process question was properly preserved or waived by Cerrillos Gravel before the Board. The district court must decide that issue as well on remand. In remanding, however, we note that Cerrillos Gravel raises a serious issue implicating important due process and public policy concerns. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (observing that some form of hearing is required before an individual is deprived of a property interest). "In administrative proceedings due process is flexible in nature and may adhere to such requisite procedural protections as the particular situation demands." *State ex rel. Battershell v. City of Albuquerque*, 108 N.M. 658, 662, 777 P.2d 386, 390 (Ct.App. 1989). A limit of two minutes per person raises concerns. Whether those concerns rise to the level of due process violations depends on context and a full consideration of facts and circumstances. We leave that consideration to the district court.

## CONCLUSION

{29} For the reasons stated above, we affirm the decision of the Court of Appeals reversing the district court, and remand for further proceedings.

{30} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices.